IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEVON IT, INC., et al.,

               Plaintiffs,

   v.

IBM CORP., et al.,

               Defendants.

CIVIL ACTION

NO. 10-2899

**OPINION**

**Slomsky, J.**                                                                                                          **December 20, 2013**

I.   **INTRODUCTION**

      On November 21, 2013, this Court issued an Opinion and Order denying the Mitts Law Firm's claim to an attorney charging lien for additional fees from its former clients in the above-captioned case.[1]  Devon had previously entered into a settlement agreement with Defendants in this case, which provided that a portion of the settlement proceeds be paid to Devon.  After the Mitts Firm asserted the charging lien against the settlement proceeds, the Court Ordered that $4.1 million of the proceeds be placed in an escrow account with the Clerk of Court, pending the resolution of the attorney charging lien asserted not only by the Mitts Firm but also by several vendors that the Mitts Firm retained to assist in the litigation.  The third-party vendors with an interest in the escrowed funds are:  (1) EconLit, LLC; (2) ParenteBeard, LLC; and (3) FranklyLegal, LLC (collectively referred to as "Intervenors").  In the seventy-three page Opinion issued after hearings held over six days, the Court held that neither the Mitts Firm nor the Intervenors were entitled to the imposition of a charging lien on the settlement funds.  The Court

---

[1] The former clients are the original Plaintiffs in this case and will be referred to in this Opinion as "Devon," which consists of Devon IT, Inc., Devon Ad Tech, Inc., and Devon (Europe), Ltd.

1

did find, however, that in applying the law of equitable estoppel, the Intervenors were entitled to be paid for services rendered in the litigation from December 27, 2011 to March 2012. The Court held that Devon will receive the balance of the $4.1 million settlement proceeds after payment to the Intervenors.

On December 8, 2013, the Mitts Firm filed a Motion for a Stay of this Court's November 21, 2013 Opinion and Order and for Relief Pursuant to Federal Rules of Civil Procedure 52, 59 and 60. (Doc. No. 314.) Devon filed a Response in Opposition (Doc. No. 316), and the Mitts Firm filed a Reply. (Doc. No. 318.) For reasons that follow, the Court will deny the Motion filed by the Mitts Firm. (Doc. No. 314.)

**II.    BACKGROUND**

As noted above, after the Mitts Firm had a dispute over legal fees with its client, Devon, the Court Ordered that $4.1 million of the settlement proceeds be placed in an escrow account with the Clerk of Court. The Mitts Firm, and the Intervenors employed by the Mitts Firm to assist in the litigation, asserted a charging lien against the funds. Hearings on the charging liens were held on November 14, 15, and 29, 2012 and January 22 to 24, 2013. On November 21, 2013, the Court issued the Opinion holding that a charging lien would not be applied to the settlement proceeds, and that the Intervenors were entitled to be paid under the law of equitable estoppel for work performed within the specified dates.

Pursuant to the Court's Order, each of the Intervenors entered into a stipulation with Devon regarding the fees and costs owed to them. EconLit and Devon stipulated that the amount owed to EconLit is $340,083.31. (Doc. No. 308.) FranklyLegal and Devon stipulated that the amount owed to FranklyLegal is $277,453.69. (Doc. No. 309.) Finally, ParenteBeard and Devon stipulated that the amount owed to ParenteBeard is $450,042.06. (Doc. No. 307.) The Mitts Firm then filed the instant Motion, essentially seeking reconsideration and a stay. None of

the parties have objected to paying the Intervenors the stipulated amounts upon resolution of the Motion of the Mitts Firm.

## III. STANDARD OF REVIEW

The Motion of the Mitts Firm seeks a stay of this Court's November 21, 2013 Opinion and Order and relief pursuant to Federal Rules of Civil Procedure 52, 59, and 60.

### A. Federal Rules of Civil Procedure 52(b) and 59(a)-(d)

Federal Rule of Civil Procedure 52(b) provides:

> Amended or Additional Findings. On a party's motion filed no later than 28 days after the entry of judgment[2], the court may amend its findings – or make additional findings – and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59.

The Mitts Firm contends that it can seek relief under Rule 52(b) with an accompanying motion for a new trial under Rule 59. Federal Rule of Civil Procedure 59 provides grounds for a new trial and for amending or altering a judgment. Both Rules 52(b) and 59(a)-(d) provide for amendment or additional findings and conclusions by the Court after a non-jury trial is conducted. In accordance with these Rules, the Court made findings and conclusions in the Opinion dated November 21, 2013, and will consider the arguments of the Mitts Firm regarding the November 21, 2013 Opinion and Order to the extent authorized by the rules.

### B. Federal Rule of Civil Procedure 59(e)

Rule 59(e) provides that a motion to alter or amend a judgment must be filed within twenty-eight days of the judgment. The purpose of Rule 59(e) is to allow a district court to rectify its mistakes in the period immediately following entry of a judgment. White v. New Hampshire Dept. of Employment Sec., 455 U.S. 445 (1982). Courts have considerable

---

[2] Under Federal Rule of Civil Procedure 54(a), a "judgment" includes any order from which an appeal lies.

3

discretion in determining whether to grant or deny a motion to alter or amend a judgment, and may grant the motion in any of the following circumstances:

>  (1) to take account of an intervening change in controlling law;
>
>  (2) to take account of newly discovered evidence;
>
>  (3) to correct clear legal error; or
>
>  (4) to prevent manifest injustice.

Fed. R. Civ. P. 59(e); North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995). A Rule 59(e) motion may not be used to relitigate the same matters already determined by the court, and may not be used to raise arguments or present evidence that could reasonably have been raised before the entry of judgment. Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52-53 (2d Cir. 2012). The Court of Appeals will review motions to alter or amend a judgment filed pursuant to Rule 59(e) review for abuse of discretion, "except over matters of law, which are subject to plenary review." Cureton v. National Collegiate Althetic Ass'n, 252 F.3d 267, 272 (3d Cir. 2001).

### C.    Federal Rule of Civil Procedure 60

Federal Rule of Civil Procedure 60(b) provides that a party may obtain relief from a judgment or order of the court for any of the following six reasons:

>  (1) mistake, inadvertence, surprise, or excusable neglect;
>
>  (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
>  (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
>  (4) the judgment is void;

4

>   (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
>   (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). The decision to grant or deny relief under Rule 60 also lies in "the sound discretion of the trial court guided by accepted legal principles applied in light of all the relevant circumstances." Allen v. Wydner, No. 06-4299, 2008 WL 2412970, *3 (E.D. Pa. Jun, 10, 2008). Rule 60(b) provides an extraordinary remedy, and special circumstances must justify granting relief. Twp. of Tinicum v. City of Phila., No. 09-2872, 2010 U.S. Dist. LEXIS 120643, at *4 (E.D. Pa. Nov. 12, 2010).

The Mitts Firm does not specify which of these six grounds for relief under Rule 60(b) its Motion is based on. However, it appears that the Mitts Firm is requesting relief based on either newly discovered evidence pursuant to 60(b)(2), fraud pursuant to 60(b)(3), or any other reason that justifies relief pursuant to 60(b)(6).

Under Rule 60(b)(2), newly discovered evidence (1) must be material, not merely cumulative; (2) could not have been discovered before trial through the exercise of reasonable diligence; and (3) would probably have changed the outcome of the trial or judgment. Allen, 2008 WL 2412970 at *6. Newly discovered evidence refers to evidence of fact in existence at the time judgment was entered of which the aggrieved party was excusably ignorant. United States v. 27.93 Acres of Land, 924 F.2d 506, 516 (3d Cir. 1991).

Rule 60(b)(3) authorizes the court to grant a motion to relieve a party from final judgment because of fraud, misrepresentation, or misconduct by an opposing party. The moving party has the burden of proving fraud or misrepresentation by clear and convincing evidence. See Mastini v. American Te. & Tel. Co., 369 F.2d 378, 379 (2d Cir. 1966).

5

Finally, a court may grant relief under Rule 60(b)(6), even though the case does not fit into one of the other more specific provisions of Rule 60(b), if there is "any other reason that justifies relief." Fed. R. Civ. P. 60(b). This provision "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." Klapprott v. United States, 335 U.S. 601, 615 (1949). This provision applies only when there are reasons for relief other than those set out in the more specific clauses of Rule 60(b).

### D. Request to Stay Proceedings

In the Motion, the Mitts Firm requests a stay of this Court's November 21, 2013 Opinion and Order. Staying a case is an extraordinary measure. Pelzer v. City of Philadelphia, No. 07-0038, 2007 WL 1377662, *2 (E.D. Pa. May 7, 2007). The Mitts Firm does not provide the rule or standard under which it is seeking a stay. The Court will assume, however, that the Mitts Firm seeks a stay of execution of any Order distributing the funds held in the escrow account pending resolution of its instant Motion for Relief. Federal Rule of Civil Procedure 62(b) provides for a stay pending the disposition of a motion filed pursuant to the Federal Rules of Civil Procedure cited by the Mitts Firm. In deciding whether to grant a stay pursuant to Rule 62(b), a court must consider the following factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Hilton v. Braunskill, 481 U.S. 770, 776 (1987). "The burden of establishing whether these four factors have been met lies with the party seeking the stay. However, while these four 'factors structure the inquiry . . . no one aspect will determine its outcome. Rather, proper judgment

6

entails a delicate balancing of all elements.'" United States v. Nicolet, Inc., 1988 U.S. Dist. LEXIS, 1858, *3 (E.D. Pa. Mar. 1, 1988)

IV.   ANALYSIS

    A.   **The Mitts Firm Fails to Establish Grounds for Relief Under FRCP 52, 59 or 60**

        1.   **Kroll**

The Mitts Firm alleges that Devon perpetrated a fraud on this Court as a result of what the Mitts Firm learned in litigation between Devon and Kroll in a lawsuit filed by Kroll against Devon in Minnesota, which was removed to federal court.  Specifically, the Mitts Firm asserts that Devon argued in the Minnesota case that Kroll was not entitled to be paid for its work on the IBM litigation, while it argued before this Court that Kroll was entitled to payment of $250,000.  Devon, on the other hand, submits that it has always taken the same position, namely that Kroll was not entitled to payment for services rendered in the IBM litigation because of its poor service, but that in any event the Mitts Firm was responsible to pay Kroll for its services under the March 2011 Fee Agreement and the modification when it provided in October 2011 $250,000 to the Mitts Firm to pay Kroll.  At that time, Kroll was heavily involved in document review.

The Court has reviewed the Mitts Firm's allegations regarding Devon's position on Kroll in this case and in the Minnesota case.  The Court is not convinced that Devon took a different position in the two cases, or that the Mitts Firm has shown by clear and convincing evidence that a fraud was perpetrated on this Court.  In both cases, Devon took the position that because of Kroll's substandard work product, it was not entitled to be paid.  Moreover, in this case, Devon took a second position, which is not inconsistent with its first position.  The second position was that if Kroll is entitled to payment, it was the responsibility of the Mitts Firm to make the payment.  These positions do not change the Court's view that in October 2011, Kroll was still

7

working on Devon's behalf and was entitled to be paid by the Mitts Firm for its services and to be sent the $250,000 that Devon gave to the Mitts Firm specifically to pay Kroll. They also do not change the fact that the Mitts Firm retained the $250,000 that was earmarked for Kroll, which the Mitts Firm fails to mention in its Motion and Memorandum of Law and Reply brief. Based on the testimony taken in this matter and Devon's supplemental briefing, it is clear that Devon has not taken a position in this case that is contrary to its position in the Minnesota litigation. As such, Devon did not perpetrate a fraud on this Court.

The Mitts Firm also contends in its Motion for Relief, Memorandum of Law, and Reply Brief that because Devon argued in the Minnesota case that Kroll was not entitled to any money, its failure to pay the $250,000 to Kroll was not a material breach of the March 4, 2011 Fee Agreement. The Court disagrees. When a client advances funds to a law firm for a specific purpose and the law firm agrees to use the money for that purpose, the law firm has an obligation to follow the instructions to the letter. Here, the Mitts Firm even sought additional money from the client to pay Kroll, and Devon agreed to the $250,000. Accordingly, the Mitts Firm's failure to pay Kroll is a serious breach of the Fee Agreement. In addition, the Mitts Firm in its post-hearing memorandum ignores another finding of the Court – that it breached the Fee Agreement by failing to pay the other vendors out of the tranches it received. As fully discussed in the November 21, 2013 Opinion of the Court, this requirement was a material term of the Fee Agreement and was clearly breached by the Mitts Firm.

    2. **Devon's Solvency**

The Mitts Firm contends that Devon deceived this Court by failing to disclose a multimillion default demand notice it received from Clientron (the Taiwanese manufacturer of Devon's thin client product). During the hearings on this matter, the Court noted that evidence

about Devon's solvency is irrelevant to the outcome of this case. This ruling continues to be true. The Mitts Firm's allegation regarding Devon's solvency is irrelevant and is an unpersuasive reason to render a different result.

### 3. The Court Was Not Misled by Devon's Exhibit D-132

Next, the Mitts Firm alleges that Devon deceived the Court by putting forth Exhibit D-132 as the final settlement agreement between Burford and Devon. The Court, however, was not misled by Exhibit D-132. Instead, the Court relied upon Exhibit M-289 as the executed settlement agreement between Burford and Devon. Devon's Exhibit D-132 included the signed affidavit by John Bennett, which was executed on May 18, 2012. In the Court's November 21, 2013 Opinion and accompanying footnote 31, the Court acknowledged the difference between Exhibit D-132 and the final Settlement and Release Agreement in Exhibit M-289 and noted that the affidavit does not affect the Intervenors' right to payment. Footnote 31 of the Opinion states:

> 31. This paragraph [from the affidavit of Bennett on behalf of Devon] further states that it is for the benefit of Devon and Driftwood [Burford] only, and not for the benefit of the Mitts Firm and/or Kellogg, and Devon also retained the right to dispute any fees and expenses of vendors and experts hired by the Mitts Firm and Kellogg. (See Ex. D-132.) Before Bennett executed the affidavit on or about May 18, 2012, Devon had engaged in conduct which caused the Intervenors to continue to work on its behalf. See Section III(F)(2). Accordingly, although Devon relies upon this extra language to dispute claims of the Intervenors, it does not defeat their right to payment from the Settlement Fund, as discussed infra.

(Doc. No. 305 at n. 31.) In this regard, the Mitts Firm's contentions regarding Exhibit D-132 are unpersuasive. Moreover, in footnote 40 on page sixty-one of the November 21, 2013 Opinion, the Court noted as follows:

> The Mitts Firm does not argue in its Post-Hearing Memorandum of Law that Bennett's statement in his affidavit, which is attached as Exhibit A to the settlement agreement with Burford, that Devon

9

> would be responsible for the outstanding invoices of the Mitts Firm modified the Fee Agreement with Devon.  Even if the Mitts Firm had made such an argument, the Court would have rejected it. There is no evidence that the Burford/Devon settlement agreement was incorporated into the Fee Agreement and, as such, would constitute a modification.

(Id. at n. 40.)

Regardless of whether the Court considered Exhibit M-289 or D-132, neither one changes the fact that Devon's settlement agreement with Burford did not in any way modify the Fee Agreement with the Mitts Firm.  The Court was aware of both exhibits as part of the record and was not misled by Devon about their content or effect.  Moreover, as noted above, the Court held that before Bennett executed the affidavit in Exhibit D-132, Devon had engaged in conduct that caused the Intervenors to continue to work on its behalf.  Therefore, the Intervenors were entitled to be paid for their work.  Consequently, the argument that the Court was misled by Exhibit D-132 is unpersuasive.

### 4. The Mitts Firm Was Not Fraudulently Induced to Enter into the March 4, 2011 Fee Agreement with Devon

Finally, the Mitts Firm claims that Devon fraudulently induced it to enter into the March 4, 2011 Fee Agreement because Devon and John Bennett "fabricated and greatly exaggerated their damages," concealed their fraud on IBM, an original Defendant in this case, the International Data Corporation ("IDC"), and the Commonwealth of Pennsylvania, all so that the Mitts Firm would agree to work on a discounted hourly rate and partial contingent fee.  (Doc. No. 314 at 8.)

On February 15, 2011, prior to entering into the Fee Agreement with Devon, the Mitts Firm prepared for Devon a detailed assessment of the IBM case ("Case Assessment"), which Devon has submitted as Exhibit D-196.  The Case Assessment contains an analysis of the basic

allegations in the IBM case, the current status of the case, the causes of action with detailed factual support, an analysis of IBM's defenses, evidentiary support detailing IBM's misconduct, and the likely recovery, among other details. The contents of the Case Assessment, the fact that the Mitts Firm was composed of experienced litigators, and the record in this case, lead the Court to conclude that the Fee Agreement was negotiated at arms-length and the Mitts Firm had a significant amount of information about the case before the Fee Agreement was executed.

The Mitts Firm learned about the alleged fraud of Devon on IBM, IDC, and the Commonwealth of Pennsylvania during discovery and prior to asserting a charging lien. The Mitts Firm discovered it during the deposition of Mr. Mancini and did not raise this matter as a reason to void the Fee Agreement. Moreover, after finding out about the alleged fraud by Devon, the Mitts Firm did not file a motion to withdraw as its counsel. The Mitts Firm only sought to withdraw after the fee dispute arose. Thus, the fact that the alleged fraud was not advanced beforehand as a reason to set aside the Fee Agreement undermines the credibility of the position now taken. In addition, to the extent that the Mitts Firm raises as a new argument that it was fraudulently induced to enter into the Fee Agreement, this is inappropriate in a motion for reconsideration.[3] See Reich v. Compton, 834 F.Supp. 753, 755 (E.D. Pa. 1993) (noting that motion for reconsideration is not a proper vehicle to raise new arguments).

The Mitts Firm's claim about the conduct of Devon in regard to IBM, IDC, and the Commonwealth of Pennsylvania, and the exaggeration or fabrication of damages, which the

---

[3] In footnote 3 on page 4 of the Mitts Firm's Reply Brief, the Mitts Firm contends that it raised fraudulent inducement as a reason to void the March 4, 2011 Fee Agreement in its charging lien motion and supporting briefs. (Doc. No. 318 at 4.) The Court has checked the citations to the record noted by the Mitts Firm and has not found the use of the term "fraudulent inducement" by the Mitts Firm. There are passing references to fraudulent conduct by Devon, but they are not asserted as a basis for finding the Fee Agreement void. No separate section of the Memorandum of Law in Support of the Charging Lien discusses the notion that Devon fraudulently induced the Mitts Firm to enter into the March 4, 2011 Fee Agreement.

Mitts Firm contends all spilled over to induce the Mitts Firm to enter into the Fee Agreement, is misplaced. At best, the Mitts Firm is bringing to the Court's attention to weaknesses in the case that Devon had against IBM. Such hazards in litigation frequently occur, and counsel representing a client must consider them in the overall evaluation of the merits of the case, albeit for settlement or trial purposes. The fact that the Mitts Firm may have been surprised by conduct uncovered during the course of the litigation is not a reason to void the March 4, 2011 Fee Agreement.

In sum, the four reasons asserted by the Mitts Firm under Rules 52, 59, and 60 to overturn or modify the Court's Order of November 21, 2013 do not warrant the relief requested in the Motion. The Mitts Firm has not cited any intervening changes in controlling law or clear legal error. Moreover, for the most part, the evidence the Mitts Firm relies upon was not newly discovered after the hearing, but in fact known to the Mitts Firm beforehand. No manifest injustice has been established. Finally, the evidence submitted does not constitute fraud, misrepresentation, or misconduct, or provide any other reason that justifies relief. With the benefit of hindsight, the Mitts Firm is merely raising matters to overcome the fact that it undertook more responsibility than it should have taken under the Fee Agreement and ended up in an untenable financial position.

**B.     The Mitts Firm Has Not Met Its Burden To Justify A Stay**

    **1.     A Stay on the Instant Motion for Relief Pursuant to Federal Rule of Civil Procedure 62(b) Is Not Warranted[4]**

The Mitts Firm requests a stay of this Court's November 21, 2013 Opinion and the distribution of funds held in the escrow account, but provides no explanation as to why this case

---

[4] In effect, even though the stay was not warranted, the matter was stayed because no distribution of the escrow funds has yet been made.

should be stayed, or the standard under which it seeks the stay. The Court will assume the Mitts Firm seeks a stay of execution of judgment in accordance with the Opinion of November 21, 2013 pending resolution of the instant Motion for Relief, pursuant to Federal Rule of Civil Procedure 62(b). As noted previously, the Court must consider the following factors in deciding whether to grant a stay:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Hilton, 481 U.S. at 776. "In applying this four-part test it should be noted that a stay will be issued only if each of the conditions is satisfied." DCNC North Carolina I, LLC. v. Wachovia Bank, NA., No. 09-3775, 09-3776, 2009 WL 3209728, at *1 (E.D. Pa. Oct. 5, 2009).

Considering the four factors listed above, the Court finds that the equities favor a denial of the stay. The Mitts Firm's Motion for Relief is being denied. For the reasons set forth in the Opinion of November 21, 2013 and this one, and given the nature of the issues here arising under equitable principles, the Mitts Firm has not made a strong showing that it is likely to succeed on the merits. The claims made in the instant Motion before the Court raise factual matters for which there is no clear error. Moreover, the underlying issues involve equitable principles over which the Court has considerable discretion.

While the Mitts Firm will suffer irreparable harm if the stay is denied because the funds will be distributed, consideration of the first factor and the remaining two outweigh the factor of harm to the Mitts Firm. Imposing a stay would unduly prejudice the other parties, Devon and the Intervenors. Devon and the Intervenors have waited since October 5, 2012 for the money to be released from the escrow fund. Staying the litigation would further delay payment and

especially prejudice the Intervenors, who have been unfairly affected by the dispute between the Mitts Firm and Devon.  Thus, the prejudice or injury to Devon and the Intervenors is a compelling factor.  Finally, the public interest will not be served by staying this case, which is based on a private dispute between a law firm and its client.  On balance, the factors listed above do not support staying these proceedings.

### (2)	A Further Stay Pending Appeal Is Also Not Warranted

In assessing whether to grant a stay pending appeal, the Court must examine the same four factors listed above:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Republic of Phil. v. Westinghouse Elec. Corp., 949 F.2d 663, 658 (3d Cir. 1991) (citation omitted).  Moreover, as noted, the Court of Appeals will review motions to alter or amend a judgment filed pursuant to Rule 59(e) review for abuse of discretion, "except over matters of law, which are subject to plenary review." Cureton, 252 F.3d at 272.

For the same reasons a stay of the pending Motion should not be granted, a stay pending appeal should not be granted.  The Mitts Firm raises factual matters in the instant Motion, rather than matters of law.  The equitable nature of this case vests considerable discretion in this Court.  Thus, it appears that the Court of Appeals would review this Court's decision on the Motion for abuse of discretion and on the facts for clear error.  As stated above, the Mitts Firm has not made a strong showing that it is likely to succeed on the merits.  In its discretion, the Court has balanced the above factors and finds that a stay pending appeal would not be warranted.

## V. CONCLUSION

For the foregoing reasons, the Court will deny the Mitts Firm's Motion for Relief Pursuant to Federal Rules of Civil Procedure 52, 59 and 60.  The Court will also deny the Mitts Firm's Motion for a Stay of this Court's November 21, 2013 Opinion and Order.  Furthermore, the Court will enter an Order directing the Clerk of Court to distribute the $4.1 million held in escrow to Devon and the Intervenors.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEVON IT, INC., et al.,

        Plaintiffs,

  v.

IBM CORP., et al.,

        Defendants.

CIVIL ACTION

NO. 10-2899

## ORDER

**AND NOW**, this 20th day of December 2013, upon consideration of the Mitts Firm's Motion for a Stay of this Court's November 21, 2013 Opinion and Order and for Relief Pursuant to Federal Rules of Civil Procedure 52, 59 and 60 (Doc. No. 314), Devon's Response in Opposition (Doc. No. 316), and the Mitts Firm's Reply (Doc. No. 318), it is **ORDERED** that the Mitt's Firm's Motion for a Stay of this Court's November 21, 2013 Opinion and Order and for Relief Pursuant to Federal Rules of Civil Procedures 52, 59 and 60 (Doc. No. 314) is **DENIED**.

BY THE COURT:

/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.